HENRY RAMER, PLAINTIFF, v. BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY, EDWARD HOFGESANG, DOROTHY ANN SELTZER AND JOHN J. DEGNAN, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 23, 1977.

464

*Mr. Henry Ramer, pro se.*

*William F. Hyland,* Attorney General of New Jersey, for defendants (*Mr. Paul G. Levy,* Assistant Attorney General appearing).

SCHOCH, A. J. S. C. This matter is before the court on cross-motions for summary judgment. Plaintiff filed an action in lieu of Prerogative writs seeking an order requiring defendants to produce for his inspection and copying all

records pertaining to the use of the expense allowance appropriated by the Legislature for the Governor for the fiscal years 1974–75, 1975–76 and 1976–77. Defendants are the Governor, the Director of Budget and Accounting, the Governor's Acting Executive Secretary and the Governor's personal secretary.

The appropriation which is the subject matter of this suit is in the amount of $35,000 and is contained in the annual appropriation bill for each of the fiscal years, and worded as follows:

**An allowance to the Governor of funds not otherwise appropriated, for official reception on behalf of the State, operation of an official residence and other expenses.**

There is no factual dispute about the manner in which these funds are disbursed to the Governor from the State Treasury. Four times a year the Governor submits a voucher for one-fourth of the appropriation, or $8,750 — these vouchers being submitted in advance of any disbursement by the Governor, *i. e.,* the first voucher for the '76–'77 fiscal year being submitted on July 1, 1976, and quarterly thereafter. The check from the Treasury in payment of this voucher is then put into a savings account used only for that purpose in the name of Brendan T. Byrne, Governor of New Jersey, and withdrawals from that account are made by his Executive Secretary or personal secretary and the funds placed in a checking account, and bills submitted to the Governor's office are then paid from that account. The checkbooks, records, invoices, etc., relating to these two bank accounts are kept by and in the possession of the Governor's personal secretary. No detailed accounting of any sort is made by or on behalf of the Governor to the Director of Budget and Accounting.

The arguments raised by plaintiff follow this sequence: The defendant Budget Director has an obligation to keep or maintain records of the $35,000 account as required by the State Constitution and several statutes; the records of this

account are subject to inspection under the Right To Know Law, *N. J. S. A.* 47:1A–4, because of the statutory requirement to keep records of this account; no defendant can defeat the right to inspect by a failure to keep records; defendant Byrne has a statutory obligation to keep these records; the records that are presently in the possession of the Governor's personal secretary are subject to inspection by applying a reading of *N. J. S. A.* 47:1A–4 and 47:3–8.1 *in pari materia,* and in any event, plaintiff has a common law right to inspect these records.

The constitutional authority relied on by plaintiff refers to *N. J. Const.* (1947), Art. VII, § 1, par. 6, which defines the position of State Auditor and includes the following:

It shall be his duty to conduct post audits of all transactions and accounts kept by or for all departments, offices and agencies of the State government, to report to the Legislature or to any committee thereof as shall be required by law, and to perform such other similar or related duties as shall, from time to time, be required of him by law.

Defendants counter these arguments by contending that the constitutional and statutory requirements have been met by defendant Budget Director in maintaining the records of the disbursement of the funds from the State Treasury to the Governor, and that no further action by way of accounting is required of the Budget Director. Defendants concede that these records are encompassed by the definitions of public records set forth in *N. J. 'S. A.* 47:1A–2 and 47:3–16. They argue that considering the type of appropriation, the legislative history and the manner in which this appropriation has customarily been handled negate any finding that the detailed records of disbursements from this appropriated fund are "public records."

For reasons which will appear below, I find that defendant Budget Director has met all of the constitutional and statutory requirements, and insofar as that defendant is concerned, he is not obligated to require detailed accountings

of the disbursement of the expense allowance fund to be submitted to him. Of course, the records which he does keep and which are in his possession are public records subject to inspection by the plaintiff.

With respect to the Governor's Executive Secretary, plaintiff advances the theory that he is obligated to keep records of the expenditure of money from this account based on *N. J. S. A.* 52:15–3, which reads, in part, as follows:

The Governor may appoint and commission a person to be known as the Secretary to the Governor who shall hold his office during the pleasure of the Governor and shall keep a correct record of all executive proceedings and *decisions.* \* \* \* [Emphasis supplied]

Plaintiff suggests "decisions" in that statute encompasses decisions made with respect to paying bills out of the expense allowance fund. This hardly seems to the court to be a correlation that was envisioned by the Legislature when they established the scope of the duties of Executive Secretary, and the court rejects this argument summarily.

As to the Governor's personal secretary, the plaintiff uses a different approach. He claims that he is entitled to see the records which she has kept by applying the definition of "public records" as contained in *N. J. S. A.* 47:3–16, which defines a public record as one "which has been made or is required to be received \* \* \* in connection with the transaction of public business \* \* \*." He argues that whether or not there was any requirement under law to keep records of the disbursement of the expense allowance, the fact that these are papers which had been made in connection with the transaction of public business brings them within the purview of the Right To Know Law and therefore properly the subject of inspection by plaintiff. Plaintiff cites several cases, among them *Nero v. Hyland,* 136 *N. J. Super.* 537 (Law Div. 1975) ; *Citizens For Better Education v. Camden Bd. of Ed.,* 124 *N. J. Super.* 523 (App. Div. 1973) ; *Trenton Times Corp. v. Bd. of Ed. of Trenton,* 138 *N. J. Super.* 357 (App. Div. 1976). A review of each of these cases dis-

closes that they stand for the proposition that the right to inspect is not limited to the restrictive definition of public records in *N. J. S. A.* 47:1A–2, which provides that:

\* \* \* all records *which are required by law* to be made, maintained or kept on file \* \* \* shall for the purpose of this Act, be deemed to be public records. \* \* \*.

Instead, the cases extend that definition to include the definition contained in *N. J. S. A.* 47:3–16 which is much more extensive.

The *Citizens for Better Education* case involved a request for disclosure of results of standardized achievement tests and the court held that these records were public records not only because the reporting of test results was required by administrative rule and therefore encompassed within 47:1A–2, but they were also retained by the school boards because of the information contained therein, a part of the definition of 47:3–16.

In the case of *Nero v. Hyland* the document involved was a report of a character investigation of the plaintiff ordered by the Attorney General. The court held that such a document did not come within the definition of public records under the Right To Know Law because such an investigation was within the discretion of the Governor and the Attorney General and not required by law, but went on to hold that it did come within the definition of public record contained in the Destruction of Public Records Law because it was a paper received by a state officer and retained for the information contained therein. Plaintiff was denied access to this document based on other reasons and not because it did not come within the applicable definitions.

Again, in *Trenton Times Corp.,* the document sought to be disclosed was a letter from the school board to the superintendent of schools containing not only a notice of non-renewal of his contract but also an evaluation of his performance. Here the court held that the notice of non-renewal was properly a subject of disclosure since it was

required by law but that the portion relating to performance evaluation was not subject to disclosure. The court held that it was neither required by law nor was it received by the board in the course of public business nor retained by the board for the information contained therein.

■ Finally, plaintiff advances his common law right to inspect these documents, and the defendant opposes this issue, as well as the other issues, by suggesting improper motives on the part of plaintiff in light of the fact that he was a candidate for public office and a member of the Republican Party. Preliminarily, the court notes that "no showing of any personal or particular interest in the requested material is required under the Right To Know Law," *Irval Realty v. Bd. of Pub. Util. Comm'rs.*, 61 *N. J.* 366 (1972). With respect to the common law right, a quotation from a case decided before passage of the Right To Know Law is apposite:

Plaintiffs are clearly entitled to inspect and copy the particular records they have designated. Their complaint demonstrates a legitimate interest, not only in their own right as residents and taxpayers of the county, but in the interest of the Mercer County public at large. * * * The fact that two of the plaintiffs are Republican Candidates for election to the Freeholder Board is of no moment. [*Moore v. Mercer Cty. Freeholder Bd.*, 76 *N. J. Super.* 396, 406 (App. Div. 1962)]

■ I find that plaintiff has a sufficient interest to assert both his statutory right and his common law right to inspect public records.

■ A decision in this case cannot be reached without an inquiry being made into the background of the method of appropriating funds and the intent of the Legislature in this manner of handling this item. There has been a line item in every appropriations bill since 1896, with the amount of money and the statement of reasons changing over the years. Through the years 1896-1909 the Governor was required to account for expenditures under this emergency appropriation. That requirement does not appear in any bill thereafter. In the years 1945-1953 the appropriation was to meet any emergency including entertainment and inci-

dental *personal* expenses. In 1954 the mention of "emergency" was dropped, and in 1955-1962 a phrase, "incidental personal expenses," was included again and the "operation of an official residence" was added. In 1963-1973 the appropriation was for entertainment, incidental expenses and operation of an official residence (the word "personal" was dropped). Finally, in the fiscal years at issue in this case the wording was changed and for the first time this appropriation was called "an allowance" and the word "entertainment" was replaced by "official reception," and the appropriation was also for "operation of an official residence and other expenses."

An analysis of the change in wording over the years leads ineluctably to the conclusion that the Legislature did not intend to require the Governor to account for the manner in which this fund was spent nor to limit the use of these funds to purely public expenses. Also, although it is concededly of minor persuasive value, this conclusion is bolstered by the custom followed by former Governors over a good number of years of treating this fund as an expense account accountable only to the IRS. Further, if the Legislature intended that the Governor should account for the disbursement of these funds, it would have been a simple matter to include that in the appropriations bill, or the line item could have been made a part of the other line items in the Governor's budget which do require accounting rather than under a separate heading.

The case of *Holmes v. State Officers Comp. Comm'n,* 57 *Mich. App.* 226 *N. W.* 2d 90 (Ct. App. 1975), relied upon by plaintiff for a definition of "allowance," is clearly inapposite. By definition in that case the expense allowance is "reimburseable accountable allowance," but compare 3 *U. S. C. A.* § 102, *"Compensation Of The President,"* which includes an expense allowance "for which no accounting, other than for income tax purposes, is necessary," with the allowance to be used to assist in defraying expenses relating to or resulting from the discharge of his official duties.

To sum up, by my finding that the Legislature did not intend to limit the Governor's use of these funds or to require him to account for them, it follows that these records are not "public records" as defined in either *N. J. S. A.* 47:1A-4 or *N. J. S. A.* 47:3-16. With respect to the latter statute I conclude that these records have not been made in connection with the transaction of public business but rather are the private records relating to the Governor's disbursement of an expense allowance.

This being so, plaintiff is not entitled to inspect these records and this prohibition extends to defendant Seltzer, the Governor's personal secretary.

As indicated above I have found that the duties of the Governor's Executive Secretary under *N. J. S.* 52:15-3 do not encompass the keeping of this type of record.

Finally, because of my finding that the Governor's records are not public records, I find that defendant Budget Director is not required to keep any record beyond the documentation of the quarterly payments to the Governor.

The motion for summary judgment on behalf of defendants is granted and plaintiff's motion denied.